**Thomas D. CARVER, Plaintiff,**

v.

**Jeremiah W. NIXON, et al., Defendants.**

No. 94–3505–CV–S–4.

United States District Court,
W.D. Missouri,
Southern Division.

April 18, 1995.

T. Patrick Deaton, Jr., Springfield, MO, for plaintiff.

James R. Layton, Missouri Atty. General's Office, Jefferson City, MO, for defendants.

### ORDER

RUSSELL G. CLARK, Senior District Judge.

The matter before the Court is a request to issue a decision granting a permanent injunction enjoining the enforcement of Proposition A, § 130.100 RSMo 1994 and declaring the law unconstitutional.

Plaintiff Thomas Carver filed a civil rights suit for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 to enjoin defendants from enforcing Missouri Statute Section 130.100 otherwise known as "Proposition A." On December 28, 1994, this Court granted plaintiff's motion for a temporary restraining order and ordered the parties to file suggestions concerning whether the injunction should become permanent. On January 26, 1995, the temporary order became a preliminary injunction and the Court ordered the parties to inform the Court whether they would request an evidentiary hearing in the case. On February 3, 1995, plaintiff requested an evidentiary hearing which was held on March 31, 1995. The parties filed written suggestions in support of and in opposition to a permanent injunction. For the following reasons, the Court will not issue a permanent injunction in this case.

### Statement of Facts

Missouri voters passed an initiative called Proposition A on November 8, 1994. Proposition A included Section 130.100 which provides:

130.100. Contribution Limits: There shall be the following limitations on campaign contributions:

(1) No person or committee shall make a contribution to any one candidate or candidate committee with an aggregate value in excess of:

(a) $100 per election cycle per candidate in districts with fewer than 100,000 residents;

(2) [sic] $200 per election cycle per candidate, other than statewide candidates, in districts of 100,000 or more residents. For purposes of this section, "statewide candidates" refers to those candidates seeking election to the office of Governor, Lieutenant Governor, Attorney General, Auditor, Treasurer, and Secretary of State.

(3) [sic] $300 per election cycle per statewide candidate.

(2) No person, entity or committee shall make a contribution to any other person, entities or committees for the purpose of contributing to a specific candidate which when added together or when added together with contributions made directly to the candidate or to the candidate's committee, will have an aggregate value in excess of the limits stated in section 1.

Missouri Revised Statute Section 130.011(16) defines an election cycle as "the period of time from general election for an office until the next general election for the same office."

### Issue

The sole issue in this case is whether the limits on campaign contributions set in Proposition A are too low as to be deemed an unconstitutional restriction on plaintiff's right to political expression and association under the First Amendment.

### Plaintiff's Argument

■ Plaintiff challenges the constitutionality of the provision of Proposition A limiting campaign contributions. Plaintiff asserts that the restrictions on his ability to make contributions to candidates in excess of aggregate limits per election cycle infringe upon his rights to free speech and association. Plaintiff claims the contribution limits under Proposition A are low enough as to be an unconstitutional interference with his ability to support candidates and to communicate with potential supporters for fundraising purposes. Plaintiff further argues candidates today must buy expensive time and space in print and electronic media in order to successfully campaign because these are the two major effective forms of campaigning. He argues the contribution limits will inhibit the candidates' ability to communicate their political stances and goals to the voters.

Plaintiff contends incumbents have an advantage in fundraising due to their name recognition and their already existing supporters. Plaintiff is concerned it will be particularly difficult for challengers to raise the funds needed to successfully mount a campaign against incumbents given the contribution limits and the cost involved in purchasing effective advertising. Wealthy candidates would also have an advantage over the less wealthy who would need to spend a significant amount of time seeking contributions.

Plaintiff argues the law is not narrowly tailored to meet the state's interest of avoiding corruption or the appearance of corruption. Specifically, plaintiff argues the law will not prevent wealthy special interests from fighting against the candidates who oppose them. Proposition A does not address or limit independent expenditures or indirect contributions to a campaign. Indirect contributions include actions such as corporations giving employees a leave of absence in order that they may work as campaign volunteers or contributors spending personal funds to promote the candidate without donating directly into the candidate's political fund. Plaintiff argues because Proposition A does not comprehensively attack all of the ways people and special interest groups may purchase influence with elected officials, the Court should enjoin enforcement of the law and declare it unconstitutional.

### Discussion

The case setting forth the general principles to be applied in determining the constitutionality of efforts at campaign finance reform is *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In *Buckley* the Supreme Court considered the constitutionality of several provisions of the Federal Election Campaign Act of 1971 (FECA). FECA limits campaign contributions in federal elections to $1,000 per individual contributor or group and to $5,000 per political committee for any single candidate per election. 424 U.S. at 7.

■ In *Buckley* the Supreme Court found two constitutional protections to be implicated by campaign finance reform: political expression and association. The Court recognized that a major purpose of the First Amendment is to protect political speech. "Discussion of public issues and debate on the qualifications of candidates are integral

to the operation of the system of government established by our Constitution." *Buckley,* 424 U.S. at 14, 96 S.Ct. at 632. However, the importance of political debate does not preclude all limitations on either freedom of association or freedom of speech in the political context. "Neither the right to associate nor the right to participate in political activities is absolute." *Id.* at 25, 96 S.Ct. at 638 (quoting *CSC v. Letter Carriers,* 413 U.S. 548, 567, 93 S.Ct. 2880, 2891, 37 L.Ed.2d 796 (1973)). Limitations on these rights are permissible where a compelling state interest is served, if the limitations imposed are narrowly tailored to serve that interest. *Buckley,* 424 U.S. at 25, 96 S.Ct. at 637–38; *see Austin v. Michigan Chamber of Commerce,* 494 U.S. 652, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990). Thus, even a significant interference with protected rights of political association may be sustained so long as the state demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgement of First Amendment rights to association. *Buckley,* 424 U.S. at 25, 96 S.Ct. at 637–38.

■ The Supreme Court in *Buckley* recognized that governments have a compelling interest in preventing corruption and the appearance of corruption in the electoral system that may result from the flow of large amounts of money from individual contributors to candidates. *Id.* at 25–27, 96 S.Ct. at 637–39. In its analysis, the Supreme Court did not find it necessary to look beyond the Act's primary purpose of limiting the actuality and appearance of corruption in order to find a constitutionally sufficient justification for the contribution limitations. *Id.* at 26, 96 S.Ct. at 638. Under *Buckley,* Missouri clearly has a compelling state interest in limiting campaign contributions.

The other applicable case is *Day v. Holahan,* 34 F.3d 1356 (8th Cir.1994). In *Day,* the Eighth Circuit reviewed the constitutionality of Minnesota's campaign finance reform laws. The provision plaintiff argues is applicable to this case concerns limits put on contributions to and from political committees. The Eighth Circuit held that the $100 limit was so low as to infringe upon citizens' First Amendment right to political associa-

tion and free political expression. *Id.* at 1365–66. The language of the Minnesota statute concerning contribution limits that was at issue is as follows:

Subd. 12 Contributions to other political committees or funds.

The treasurer of a political committee or political fund, other than a candidate's principal campaign committee or a political party unit as defined in section 10A.275, shall not permit the political committee or political fund to accept aggregate contributions from an individual, political committee, or political fund in an amount more than $100 a year.

The Minnesota statute differs from Proposition A in that it regulates contributions to independent committees and not direct contributions to individual candidates and their campaign committees. The court of appeals held that because the limit applies to contributions both by and to political committees and funds, the limit affects free association as well as free speech. *Id.* at 1365. The court held an annual $100 limit on contributions to or by political funds and committees is too low to allow meaningful participation in protected political speech and association and, thus, is not narrowly tailored to serve the state's legitimate interest in protecting the integrity of the political system.

The *Day* case is only applicable to this case under very narrow circumstances. Under Proposition A, there are no limits being made on contributions to or by political committees unless the purpose is to contribute to a specific candidate and when the contributions by themselves or when added together with contributions made directly to the candidate or to the candidate's committee will have an aggregate value in excess of the stated limits. Proposition A, 130.100(2). The limits in Proposition A restrict the amounts persons or committees may contribute to a candidate or a candidate committee. Under *Buckley,* some limits on the amount of contributions made by persons or committees to candidates and their campaign committees are constitutional. The remaining question in the analysis is whether the limits imposed by Proposition A are so low as to be an

unconstitutional restriction of First Amendment rights of speech and association.

The Court must determine whether Proposition A's campaign contribution limits are sufficiently tailored to meet the state's goal of maintaining the appearance of political integrity in the system without violating constitutional guarantees. This question addresses plaintiff's first argument that the dollar limits are too low. Experts at the hearing indicated they agreed with the Court that what determines the constitutionality of the limits is the dollar amount of the limits. The Supreme Court held in *Buckley* that a $1,000 limit on contributions to a candidate for a federal office such as the U.S. Senate is a constitutional limit. Here the limits are lower, however they are incremental according to the size of the district and voting population and the type of office being sought. Logically, in districts with a lower population, candidates have a smaller area in which they must campaign and fewer voters with whom they must communicate. Proposition A's limits are higher for contributions made to statewide candidates but the risk of garnering influence is lessened by the fact that there will be a larger number of contributors in those races. Further, the higher limits will help the candidates campaign in the larger geographical area of the entire state. The stairstepping of the contribution limits demonstrates a more narrow tailoring of Proposition A to fit the state's goal.

In this case, an overwhelming 74 percent of the voters of Missouri determined that contribution limits are necessary to combat corruption and the appearance thereof. The voters, through the referendum process, set the contribution limits. This is an indication of the sentiment of the voters of Missouri as to what the limits should be in order for them to feel that the state is helping stop corruption or the appearance thereof. In *Buckley,* the Supreme Court declined to analyze what contribution limits would better serve government's interest, however the Court suggested that if a plaintiff could come forward with substantial evidence that the limits were so low as to prevent candidates from "amassing the resources necessary for effective advocacy", then the candidate would

have raised a cognizable claim. *Buckley,* 424 U.S. at 21, 96 S.Ct. at 636. At the hearing, there was no indication that the contribution limitations imposed by Proposition A would have any dramatic adverse effect on the funding of campaigns and the ability of candidates to communicate to the voters.

At trial, there was evidence of the fact that in recent years, a significant number of states have imposed campaign contribution limits. Currently, at least 27 states in addition to the federal government have imposed such limits. A number of candidates have voluntarily limited the size of contributions they would accept for the purpose of assuring voters that they will not be unduly influenced by wealthier donors if voted into office. These mandatory and voluntary limits reflect the belief that steps must be taken to curb the effect of money on politics and to promote the compelling interest of impartiality in politics. Clearly, the voters of Missouri agree that the limits are an important step in promoting a compelling governmental interest in increasing the voters' trust of democratic institutions.

Plaintiff's second argument centers around plaintiff's concern that incumbents have an advantage in fundraising due to their name recognition and their already existing supporters. Plaintiff argues with the contribution limits, it will be difficult for challengers to raise the funds needed to defeat an incumbent. Further, wealthy candidates would have an advantage over the less wealthy.

It is true that incumbent candidates may often have more name recognition than challengers. However, no evidence was presented to the Court that given the limits on campaign contributions for all candidates, challengers will not be able to raise the funds needed to launch a successful campaign. In the hearing before the Court, expert testimony indicated that Proposition A does not favor incumbents and that many challengers welcome limits on contributions as a way to stop incumbents from accepting large contributions. There was testimony recounting recent political races when challengers defeated incumbents under both mandatory and voluntary campaign contribution limits. Expert testimony also revealed that with contri-

bution limits a greater percentage of the population will contribute to campaigns because people will feel that the candidates appreciate and are more responsive to the smaller contributors.

Plaintiff's last argument is that Proposition A is not narrowly tailored to meet the state's interest because it does not limit independent expenditures or indirect contributions made to a campaign nor does it limit the amount candidates themselves may contribute to their own campaigns. Plaintiff argues because Proposition A does not comprehensively attack all of the methods of garnering political influence, the Court should enjoin enforcement of the law and declare it unconstitutional.

The Court disagrees with plaintiff. Merely because Proposition A does not close all of the loopholes does not make its methods unconstitutional. Proposition A may not be worded as precisely as it could be in order to eliminate corruption, however, the law is tailored narrowly enough to help the state meet its goals of eliminating some means of corruption and of avoiding the appearance of corruption.

It is true that Proposition A does not limit the amount of personal funds a candidate may contribute to his or her own campaign and it does not limit contributors in their own personal direct expenditures made in promotion of a candidate. These types of limits are not at issue in this case. However, the Court notes that such limits on the candidate and on contributors would directly restrict the candidate's and contributors' own political speech and would run afoul of the protections of the First Amendment, while the limits on contributions at issue here only limit indirect speech of the contributor. Certainly, contributors are free to discuss candidates and issues without restriction. Plaintiff's concern that wealthy candidates may be able to direct more effective campaigns than candidates with less personal funds is a concern both before and after the enactment of Proposition A, however, no evidence was presented to the Court that this problem will be exacerbated if Proposition A is enacted. Again, just because Proposition A does not address all problems in the arena of cam-

paigning does not make its provisions unconstitutional. The Court finds that given the state's goals and interest, Proposition A is a positive step towards the elimination of political corruption, even if it is not comprehensive in its approach.

### Conclusion

The Court finds the contribution limits imposed by Proposition A are narrowly tailored to serve a compelling state interest and they do not unconstitutionally restrict plaintiff's First Amendment rights of free political speech and association.

Accordingly, it is hereby

ORDERED plaintiff's request for a decision granting a permanent injunction enjoining the enforcement of Proposition A, § 130.100 RSMo 1994 and declaring the law unconstitutional is denied.