# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2351

_____

Shrink Missouri Government PAC, a     *
political action committee; Zev David    *
Fredman,     *

       *

     Plaintiffs - Appellants,     *

       *

      v.     *

       *

Richard Adams, in his official capacity   *
as a Member of the Missouri Ethics    *
Commission; Patricia Flood, in her    *
official capacity as a Member of the    *   Appeal from the United States
Missouri Ethics Commission; Robert    *   District Court for the Eastern
Gardner, in his official capacity as a    *   District of Missouri.
Member of the Missouri Ethics    *
Commission; Ervin Harder, in his    *
official capacity as a Member of the    *
Missouri Ethics Commission; John    *
Howald, in his official capacity as    *
Chairman of the Missouri Ethics    *
Commission; Elaine Spielbusch, in her   *
official capacity as a Member of the    *
Missouri Ethics Commission; Jeremiah   *
W. Nixon, in his official capacity as    *
Missouri Attorney General; Robert P.    *
McCullough, in his official capacity as   *
St. Louis County Prosecuting Attorney,   *

       *

      Defendants - Appellees    *

       *

Joan Bray, Missouri State     *

Representative; Common Cause, a non-profit, non-partisan membership corporation organized under the laws of the District of Columbia,

     Movants

Joan Bray,

     Movant - Intervenor on Appeal

------------------------

Common Cause,

     Amicus Curiae.

Submitted: August 21, 1998

Filed: February 29, 2000
_____

Before BOWMAN, ROSS, and JOHN R. GIBSON, Circuit Judges.
_____

JOHN R. GIBSON, Circuit Judge.

This case returns to this court after we have received the judgment from the United States Supreme Court. We conclude that our appropriate course is to remand to the district court with instructions to affirm its order and judgment entered on May 12, 1998.

In our previous opinion, we held unconstitutional the contribution limits imposed by Missouri Senate Bill 650. See Shrink Missouri Gov't PAC v. Adams, 161 F.3d 519

(8th Cir. 1998), rev'd sub nom. Nixon v. Shrink Missouri Gov't PAC, 120 S.Ct. 897 (2000). Under these limits, the contributions made to a candidate in any one election cannot exceed $1,075 for candidates for statewide office, or for any office where the population of the electoral district is 250,000 or more; $525 for candidates for state senator, or for any office where the population of the electoral district is 100,000 or more; and $275 for candidates for state representative or for any office where the population of the electoral district is less than 100,000. See Mo. Rev. Stat. § 130.032.1 (Supp. 1997).[1] We enjoined enforcement of the law pending appeal and ultimately reversed the district court's order, which held the limits constitutional. We applied the strict scrutiny standard of review and reasoned that the State's evidence was insufficient to prove a compelling interest that would be served by the contribution limits of SB650. See 161 F.3d at 521-22.[2] The Supreme Court subsequently reviewed only the statewide limit of $1,075, and reversed and remanded. See Nixon v. Shrink Missouri Gov't PAC, 120 S.Ct. 897 (2000).

The decision of the Supreme Court and its judgment and mandate require that we remand to the district court with instructions to enter judgment affirming the validity of § 130.032.1 insofar as it applies to the statewide limit of $1,075. In light of that decision, we have also carefully considered our course with respect to the $525 and

---

[1]Senate Bill 650 as passed contained limits of $1,000, $500, and $250, which were increased pursuant to an inflation adjustment provision in early 1998. See Mo. Rev. Stat. § 130.032.2 (Supp. 1997).

[2]The decision for the court also expressed the view that the limits in SB650 were different in kind from those in Buckley v. Valeo, 424 U.S. 1 (1976). See 161 F.3d at 522-23. Judge Ross, who concurred in the judgment on the basis that the State failed to satisfy its evidentiary burden, did not join the opinion on this issue. See id. at 523. The dissent would have held that the limits did not differ in kind from those at issue in Buckley and that the record before the district court, primarily State Senator Wayne Goode's affidavit, was sufficient to establish the State's compelling interest. See id. at 523-28.

$275 limits. We are satisfied that the teachings of the Supreme Court in this case require reversal of our decision finding those limits invalid, which was based solely on the State's failure to prove a compelling interest.

We need not discuss in detail the legal landscape regarding statutory limits on campaign financing as set forth by the Supreme Court, in view of the limited basis of our earlier reversal. Suffice it to say that the Court discussed the exacting scrutiny required by the First Amendment as set forth in Buckley v. Valeo, 424 U.S. 1 (1976), as well as the distinction Buckley drew between expenditures and contributions and the effect of restrictions thereon with respect to speech and association rights. See Nixon, 120 S.Ct. at 903-05. Justice Souter, writing for the majority, also observed that the prevention of corruption and the appearance of corruption was found in Buckley to be a constitutionally sufficient justification for restrictions on large contributions: "In speaking of 'improper influence' and 'opportunities for abuse' in addition to 'quid pro quo arrangements,' we recognized [in Buckley] a concern not confined to bribery of public officials, but extending to the broader threat from politicians too compliant with the wishes of large contributors." Id. at 905.

The Court then examined whether there was sufficient evidence that unrestricted campaign contributions in Missouri have led to corrupt practices or an appearance of corruption to Missouri voters. The Court noted that "[t]he quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised." Id. at 906. Referring to the evidentiary basis in Buckley, the Court said that "[t]he evidence before the Court of Appeals described public revelations by the parties in question more than sufficient to show why voters would tend to identify a big donation with a corrupt purpose." Id. The Court pointed out that mere conjecture has never been adequate for a successful First Amendment challenge, but finally concluded that "this case does not present a close call requiring further definition of whatever the State's evidentiary obligation may be." Id. at 907.

Missouri voters approved an initiative (Proposition A) with even stricter contribution limits which we held unconstitutional. See Carver v. Nixon, 72 F.3d 633, 634-35 (8th Cir. 1995). The Supreme Court held that the evidence cited in the Proposition A action along with the record in this case was "enough to show that the substantiation of the congressional concerns reflected in Buckley has its counterpart supporting the Missouri law." Nixon, 120 S.Ct. at 907. The Court cited the affidavit of State Senator Wayne Goode, the co-chair of the state legislature's Interim Joint Committee on Campaign Finance Reform at the time the contribution limits were enacted, certain newspaper accounts, and the Eighth Circuit and district court opinions in Carver, including the perception demonstrated by the statewide vote that "contribution limits are necessary to combat corruption and the appearance thereof."[3] Id. at 907-08 (quoting Carver v. Nixon, 882 F.Supp. 901, 905 (W.D. Mo. 1995)). The Court pointed out that more evidentiary support might have been required had the plaintiffs done more to challenge the implications of the defendants' evidence. See id. at 908. However, the only challenge came in the form of academic studies, which conflicted with other similar studies. See id. The Supreme Court's ruling that there was sufficient evidence in Senator Goode's affidavit to support the statewide limits applies equally to the contribution limits for state senatorial and house districts and local elections.

The Supreme Court also rejected the plaintiffs' argument that the limits in this case differ in kind from the Buckley limits because of inflation. See id. at 909. It made clear that it was not called upon to overrule Buckley in deciding this case. See id.

When we first considered this case, two judges agreed that the contribution limits are not different in kind from those approved in Buckley. Our reasoning extended not

---

[3]Although in Carver we held the contribution limits unconstitutional, the Supreme Court recognized that the 74 percent vote in favor of the initiative attested to the perception of the Missouri voters. See Nixon, 120 S.Ct. at 908.

only to the statewide limit but also to the lower limits for other legislative districts. We there stated:

> When we compare the $1,075 contribution limit[4] imposed by Senate Bill 650 for each election with the $1,000 upheld by Buckley, there is simply no difference in kind. The $1,075 limit applies to statewide races, just as Buckley's $1,000 limit applies to the Senate, a statewide race, and the presidential elections. Buckley's reasoning would similarly uphold Senate Bill 650's lower contribution limits in non-statewide elections. When one accounts for the lower number of voters in non-statewide electoral districts, the limits at issue compare favorably with the $1,000 limit in Buckley, which applied to statewide races as well as to elections for the U.S. House of Representatives. There are nine House districts in Missouri, and in the most recent statewide election, the number of votes cast in these districts averaged 235,094. Official Manual, State of Missouri 563-65 (1997). Meanwhile, Senate Bill 650 imposes a contribution limit of $525 upon races for state senators as well as to certain other elections in districts ranging from 100,000 to less than 250,000 in population. Mo. Rev. Stat. § 130.032 (Supp. 1997). There are thirty-five Senate districts in Missouri. Seventeen of these seats were contested in 1996, and an average of 59,254 people voted in each election. Official Manual, State of Missouri 566-67 (1997). When the size of the state senatorial districts is contrasted with federal congressional districts as well as the entire State itself, there is plainly no "difference in kind" between these legislative limits and those countenanced by Buckley. Finally, the same must be said for the $275 limit for state House elections. In the last election, the number of votes cast in such districts averaged 12,325. Id. at 567-80. With the number of voters in such districts, [we] cannot conclude that the $275 limit "differs in kind" from those that Buckley upheld. As Buckley observed,

---

[4]The legislation at issue imposes a limit of $1,075 per election, but a $2,150 limit per "election cycle." An "election cycle" is the "period of time from [the] general election for an office until the next general election for the same office." Mo. Rev. Stat. § 130.011 (Supp. 1995). It is of interest that the average household income in Missouri is about $31,000 per year.

> Congress could have structured limits in a graduated fashion, but its failure to do so did not invalidate the legislation. Buckley, 424 U.S. at 30, 96 S.Ct. 612; Carver, 72 F.3d at 641. Buckley recognizes, then, that graduated limits such as Missouri's are an acceptable solution to the dangers posed by unlimited campaign contributions.

Shrink Missouri, 161 F.3d at 524-25. We also contrasted the legislation before us with the initiative proposal we held to be unconstitutional in Carver. See id. at 524. Carver struck down election cycle limits of $300 for all statewide elections, $200 for non-statewide elections in districts of 100,000 or more residents, and $100 for non-statewide elections in districts with fewer than 100,000 residents. See 72 F.3d at 634-35. In contrast, the legislation before us has *per election* limits of $1,075 to candidates for statewide elections and offices where the population of the electoral district is 250,000 or more, $525 to candidates for state senator and offices where the population of the electoral district is 100,000 or more, and $275 to candidates for state representative and offices where the population of the electoral district is less than 100,000. Our analysis in Shrink Missouri compels us to conclude that the State has adequately justified the contribution limits in their entirety.

We are satisfied that the Missouri legislature's conclusion that these limits are necessary to prevent corruption or its appearance (evidenced by State Senator Goode's affidavit, the various newspaper articles, and indeed the Proposition A election results, all of which were recognized by the Supreme Court) is a sufficient basis to withstand the close scrutiny Buckley requires. Further, the limits are not different in kind from the limits in Buckley, based on the differing population of the electoral districts and the number of voters actually participating in those elections. We must therefore conclude that the State has met its burden to demonstrate a compelling interest in the campaign contribution limits, that the interest is sufficient to satisfy the closest scrutiny analysis, and that the limits do not differ in kind from the limits approved in Buckley. Accordingly, we affirm all limits imposed by SB650.

Accordingly, we vacate our earlier order enjoining enforcement of § 130.032.1 in all respects, and remand with instructions to the district court to enter final judgment based upon its memorandum of May 12, 1998. We direct that the mandate issue forthwith.

BOWMAN, Circuit Judge, concurring.

In <u>Shrink Missouri</u>, the Supreme Court has spoken in a way that subordinates core First Amendment rights of free speech and free association to the predilections of the legislature and the mood of the electorate. Given that decision and the current political climate, we no doubt can expect further, even more draconian, efforts by government to restrict political speech. Any state armed with the power to limit what citizens may choose to contribute to candidates for political office, or what they otherwise may spend on political activity, bears close watching, and the courts must remain vigilant in performing their duty to protect the essential freedoms guaranteed by the Constitution.

Meanwhile, the decision of the Supreme Court in <u>Shrink Missouri</u> appears to foreordain the decision we must reach concerning the $575 and $275 limits. I therefore concur in the result of today's decision.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-